FILED
SUPERIOR COURT
OF GUAM

2020 DEC 17 PM 4: 12

CLERK OF COURT

By:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM,**<br><br>                      Plaintiff,<br><br>       vs.<br><br>**SINAMPER SUKION,**<br>DOB: 11/05/1993<br><br>                  Defendant. | **Criminal Case No. CF0091-20**<br>**GPD Report No. 20-04121**<br><br><br><br>**DECISION AND ORDER**<br>**(Defendant's Motion to Suppress)** |

## INTRODUCTION

This matter came before the Honorable Dana A. Gutierrez on October 15, 2020 for a hearing on Defendant Sinamper Sukion's Motion to Suppress. Present were Defendant Sinamper Sukion ("Defendant"); Attorney William B. Brennan representing Defendant; Assistant Attorney General Leonardo Rapadas representing the People of Guam; Language Assistance Technician Yoshinobu Israel Yoshinobu interpreting for Defendant; and Chuukese Court Interpreter Mirina F. Setik interpreting for Witness Anson Lewis. The Court subsequently took the matter under advisement and now issues this Decision and Order **GRANTING** Defendant's Motion to Suppress.

## BACKGROUND

Defendant is charged with one (1) count of First Degree Criminal Sexual Conduct (As a First Degree Felony) and one (1) count of Second Degree Criminal Sexual Conduct (As a First

Degree Felony). Defendant was arrested for the aforementioned charges on February 9, 2020. On February 10, 2020, the People filed the Magistrate's Complaint and Defendant was confined to the Department of Corrections by the Honorable Magistrate Judge Jonathan R. Quan. A Superior Court of Guam Grand Jury indicted Defendant on February 17, 2020.

On May 5, 2020, Defendant filed the instant Motion moving the Court to suppress the oral and written statements that he made to police during the custodial interrogation on February 9, 2020 from use at trial on the grounds that Defendant did not voluntarily, knowingly, and intelligently waive his *Miranda* rights. Mot. to Suppress, at 6 (May 5, 2020). The Notice of Motion filed contemporaneously with the Motion to Suppress did not set forth specific briefing deadlines; however, any opposition would normally be due fourteen (14) days after the filing of the motion.

At a Status Hearing on September 11, 2020, the Court set the due date for any written opposition from the People for September 28, 2020 and set a Motion Hearing for October 15, 2020. The Court subsequently issued an Order After Hearing Re: Briefing Schedule and Status Hearing memorializing these dates and setting a Status Hearing for October 9, 2020. *See* Order After Hearing (Sept. 17, 2020). The People did not file any written opposition.

At the October 9, 2020 hearing, the People requested that the Court grant an extension allowing them to file an opposition by Monday October 12, 2020. Defendant opposed this request. When asked by the Court what good cause formed the basis for not filing a timely opposition, the People stated that they did not have any good cause for failing to file on time. Min. Entry, at 2:02:09 (Oct. 9, 2020). Based on the lack of good cause, the fact that the Motion had been pending since May 5, 2020 and the Court's Briefing Schedule ordering due dates for the filings, the Court denied the People's request for an extension. At the October 9, 2020

2

hearing, the Court also ordered that the Parties file any Exhibit and/or Witness Lists by Tuesday, October 13, 2020 at 12:00 p.m.

Defendant's Exhibit List and Witness List were timely filed on October 13, 2020. Defendant's Witness List indicated that he intended to potentially call three to four witnesses: Vincent Carmona III; Anson Lewis; and any witness listed by the Government, including but not limited to Guam Police Department ("GPD") Officer II Steven Topasna and GPD Officer I Joe G. Nucum. The People did not file an Exhibit List or Witness List. At the start of the hearing on the Motion on October 15, 2020, the People stated they would be relying on the Defendant's Witness List and Exhibits. Digital Recording, at 9:09:32 AM (Oct. 15, 2020).

At the Motion Hearing, the People called GPD Officer I Joe G. Nucum ("Officer Nucum") as their sole witness. After the conclusion of Officer Nucum's testimony, the People stated they had no further witnesses.

Defense counsel called Anson Lewis ("Lewis"), the Defendant's nephew, as their first witness. Lewis used a Chuukese interpreter for his testimony. After Lewis' testimony, Defense counsel informed the Court they would not be calling Vincent Carmona III ("Carmona"), and that they had no further witnesses.

The People then informed the Court they would be calling Carmona as a rebuttal witness. Digital Recording, at 10:37:30 AM (Oct. 15, 2020). Defense counsel objected on the grounds that the People did not provide any notice to Defendant regarding use of Carmona as a witness and that Carmona's testimony would be repetitive and would not function as a rebuttal. *Id.* at 10:37:18-10:37:41 AM. The People made an offer of proof to the Court stating that Carmona interacted with Defendant in his work environment and that his testimony will show that

Defendant can understand some English. *Id.* at 10:37:41-10:38:01 AM. The Court allowed the People to call Carmona as a rebuttal witness.

After Carmona testified, both Parties informed the Court that they had no further witnesses. Neither Party moved to admit *any* exhibits or other documents into evidence at any point during the hearing on the Motion. The Court subsequently took the matter under advisement.

Based on the testimony received on October 15, 2020, the Court makes the following findings:

a. Testimony of Officer Joe G. Nucum

Officer Nucum was present at Defendant's residence when Defendant was first approached by GPD officers regarding the allegations in this case. *Id.* at 9:20:26-9:21:52 AM. During the People's direct examination, Officer Nucum testified that on or around February 9, 2020, the Guam Police Department received a Criminal Sexual Conduct Complaint against Defendant. *Id.* at 9:21:00-9:21:52 AM. Officer Nucum and GPD Officer II Steven Topasna ("Officer Topasna") were assigned to go to Defendant's residence in order to conduct a "suspect check," and approached Defendant at his residence during the early morning hours of February 9, 2020. *Id.* at 9:20:26-9:21:52 AM.

Upon arriving at Defendant's residence, Officer Nucum observed Officer Topasna make contact with Defendant and inform Defendant of the nature of the officers' presence. *Id.* at 9:22:35 AM. Officer Nucum testified that he could not recall the words Defendant used in response to Officer Topasna's communications with Defendant. *Id.* at 9:22:50 AM. Although Officer Nucum stated that in his opinion, Defendant responded "appropriately" to Officer's Topasna's questions, Officer Nucum testified that he never personally spoke to Defendant

directly. *Id.* at 9:23:08-13, 9:24:52-55, 9:37:48-9:37:52 AM. Officer Nucum did not observe Officer Topasna ask if Defendant needed an interpreter at any point while Officer Topasna and Defendant were within his earshot. *Id.* at 9:40:20-9:40:27 AM.

Officer Nucum testified that Defendant's "presence was requested at the central precinct for an interview," that both officers were armed, and at some point, both officers entered the residence. *Id.* at 9:23:30, 9:41:05-9:41:14 AM. Additionally, Officer Nucum observed Officer Topasna escort Defendant to his police vehicle in order for Officer Topasna to transport Defendant to GPD's Hagåtña Precinct for an interview. *Id.* at 9:23:30, 9:25:33, 9:41:00-9:41:03 AM.

Officer Nucum testified that pursuant to Officer Topasna's instructions, Officer Nucum remained at Defendant's residence in order to do a "scene check" and did not accompany Defendant and Officer Topasna to the precinct. *Id.* at 9:25:40, 9:40:00-9:40:10 AM. Officer Nucum testified that he was not present for Officer Topasna's interview of Defendant, and, therefore, did not observe any police officer administer *Miranda* rights to Defendant. *Id.* at 9:25:53, 9:40:11-9:40:14, 9:40:27-9:40:37 AM. Additionally, Officer Nucum did not observe Defendant acknowledge or sign a waiver of his *Miranda* rights. *Id.* at 9:40:37-9:40:40 AM.

The People did not call Officer Topasna as a witness.

b. Testimony of Anson Lewis ("Lewis")

Lewis testified that he is related to Defendant because Lewis's mother is Defendant's sister. *Id.* at 10:26:38-10:26:59 AM. Lewis moved to Guam from Chuuk in 2008. *Id.* at 10:20:22 AM. After coming to Guam, Lewis lived with Defendant for about ten years from the time Lewis was in elementary school until high school. *Id.* at 10:35:40-10:36:21 AM. Lewis testified that when speaking to the Defendant at home while living with him, Lewis speaks

"Chuukese because [Defendant] doesn't know English." *Id.* 10:28:35-10:28:39. Lewis further testified that Defendant is from Chuuk, that Defendant did not finish high school, and that to his knowledge, Defendant has never been arrested. *Id.* at 10:28:53, 10:29:15, 10:36:25-10:36:30 AM.

### c. Testimony of Vincent Carmona III

Carmona testified that he works at KPL Guam Company Construction ("KPL") and is a part owner and vice president. *Id.* at 4:22:18-4:22:22 AM. Defendant worked as one of Carmona's laborers at KPL from April 2017 until around January 2018. *Id.* at 10:43:41-10:43:51 AM. Carmona testified that the application to work at KPL is in English and that Defendant signed the application, but noted that Defendant brought the form home and that he did not witness the Defendant filling out the form. *Id.* at 10:44:12-10:45:35 AM. Carmona stated that Defendant's wife was with him when he submitted his application to work at KPL. *Id.* at 10:45:30-10:45:35 AM. On Defendant's cross examination, Carmona added that Defendant's wife would often accompany Defendant to work in order to speak for him in English. *Id.* at 10:53:40-10:53:56 AM.

Additionally, Carmona testified that while he gives his workers instructions in English, he sometimes uses a "Micronesian" foreman to give more complicated instructions to the laborers in Chuukese. *Id.* at 10:45:50, 10:51:30-10:52:16 AM. Carmona explained that laborers do not have to read in order to do their jobs nor do they need any specific schooling. *Id.* at 10:53:00-10:53:23 AM.

## DISCUSSION

Defendant seeks to suppress from trial the oral and written statements made to police during the custodial interrogation on February 9, 2020 on the grounds that Defendant did not

voluntarily, knowingly, and intelligently waive his *Miranda* rights. Mot. to Suppress, at 6 (May 5, 2020). In support of the Motion, Defendant asserts that he was not apprised of his rights in his native language (Chuukese); Defendant does not speak or understand English; nothing in discovery demonstrated that Defendant understood his rights beyond a nod of his head; the interviewing officer was unsure of Defendant's comprehension; no translator was provided; and Defendant has had no other experience with the criminal justice system. *Id.*

At the October 15, 2020 Motion Hearing, the People argued that Defendant did validly waive his *Miranda* rights. The People assert that Defendant was advised of his *Miranda* rights and subsequently signed a written waiver; Defendant does not have a proven low IQ; the testimony of the witnesses shows that Defendant understands some English; and English does not need to be Defendant's primary language in order for Defendant to understand his rights advised to him in English. Digital Recording, at 9:16:00-9:17:00, 11:04:25-35 (Oct. 15, 2020).

In *Miranda v. Arizona*, the U.S. Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). The Guam Supreme Court elaborated on these procedural safeguards stating:

> To safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the United States Supreme Court held in *Miranda* that "suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation."

*People v. Santos*, 2003 Guam 1 ¶ 45 (citing *Thompson v. Keohane*, 516 U.S. 99, 107 (1995)).

Unless a defendant waives his privilege against self-incrimination protected by the Fifth Amendment and the holding in *Miranda*, testimonial evidence that is a product of custodial

interrogation, such as a confession, is inadmissible. *See People v. Sangalang*, 2001 Guam 18 ¶ 12 (citing *Murphy v. Waterfront Commissioner*, 378 U.S. 52, 57 (1964); *People v. Quidachay*, Crim. No. 99997A, 1983 WL 299952, *3 (D. Guam App. Div. Nov. 8, 1983)). In order for a defendant's waiver of his *Miranda* rights to be valid, the waiver must be voluntary, knowing, and intelligent. *People v. Hualde*, 1999 Guam 3 ¶ 19; *see also Miranda*, 384 U.S. at 444. Further, "[t]here is a presumption against a finding of a waiver, and the prosecution bears the burden of proving by a preponderance of the evidence that a defendant knowingly and intelligently waived his *Miranda* rights." *Sangalang*, 2001 Guam 18 ¶ 13; *see also People v. Rasauo*, 2011 Guam 1 ¶ 16 (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)).

## A. Defendant Was Subjected To Custodial Interrogation.

The duty to provide *Miranda* warnings triggers at the point where a person is subject to custodial interrogation. *Miranda*, 384 U.S. at 444. Therefore, the first issue the Court must address is whether Defendant "was 'in custody' and whether he was 'interrogated' such that police subjected him to 'custodial interrogation' warranting advisement of *Miranda* rights prior to such custodial interrogation." *People v. Farata*, 2007 Guam 8 ¶ 22.

Courts must look to the totality of the circumstances to determine whether a person is in custody for *Miranda* purposes. *Stansbury v. California*, 511 U.S. 318, 322 (1994); *Rasauo*, 2011 Guam 1 ¶ 24. The test is whether a reasonable person would "have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008). Importantly, custodial interrogation may occur "even if police have not *formally* arrested the person or if there is no physical restraint." *People v. Cundiff*, 2006 Guam 12 ¶ 21. Furthermore, a "reasonable person" would believe he is not free to leave when officers identify themselves, tell the individual he is a suspect of a crime, ask him to accompany officers

to a police room, and the defendant has no mode of transportation to leave the police station. *See*

*Florida v. Royes*, 460 U.S. 491, 501 (1983).

Here, Defendant asserts that "[o]nce the Defendant was removed from his home and taken to the Hagåtña Precinct, he was in custody for *Miranda* purposes." Mot. to Suppress, at 4 (May 5, 2020). Additionally, Defendant concludes that "when he was interviewed by officers at the precinct, he was subject to interrogation," and, therefore, was subjected to custodial interrogation from at least that point. Mot. to Suppress, at 3-4 (May 5, 2020).[1]

Again, this Court emphasizes that the People did **not**: 1) file a written opposition to the Motion; 2) submit either a Witness List or Exhibit List; 3) move to admit any documents or other exhibits into evidence; and 4) failed to bring before the Court the officer who transported Defendant to the Hagåtña Precinct, interviewed the Defendant or allegedly advised Defendant of his *Miranda* rights. Notably, at the October 15, 2020 Motion Hearing, the People failed to address the issue of whether or when the Defendant was subject to custodial interrogation for *Miranda* purposes. Because of this, the Court can only examine the totality of the circumstances using the limited facts presented to us during Officer Nucum's testimony.

The Court must apply the "reasonable person" standard by looking at the totality of the circumstances objectively. *Craighead*, 539 F.3d at 1082. In the case at bar, the limited evidence before the Court shows that Defendant was approached by two police officers—Officer Topasna and Officer Nucum—at Defendant's residence in the early hours of the morning on February 9, 2020. Digital Recording, at 9:20:26-9:21:52 AM (Oct. 15, 2020). Officer Topasna informed Defendant of the nature of their presence and asked if he could speak with the Defendant. *Id.* at

---

[1] *See also* Mot. to Suppress, at 4, n.2 (May 5, 2020) ("Should the People contest this conclusion, the Defendant is prepared to argue he was subjected to custodial interrogation while making any statements after he was taken from his home, and does not waive such argument.").

9:22:35-9:22:45 AM. Specifically, Defendant's "presence was requested at the central precinct for an interview." *Id.* at 9:23:30 AM. Both officers were armed, and at some point, both officers entered the residence. *Id.* at 9:41:05-9:41:14 AM. Lastly, Officer Topasna escorted Defendant to his police vehicle in order to transport Defendant to the Hagåtña Precinct for an interview. *Id.* at 9:23:30, 9:25:33, 9:41:00-9:41:03 AM.

Based upon the testimony provided during the October 15, 2020 Motion Hearing and the fact that the People did not present any evidence or arguments to refute such a finding, the Court finds that a "reasonable person" in Defendant's situation would have felt that he was "not at liberty to terminate the interrogation and leave" where armed, uniformed police officers approached Defendant at his residence during early morning hours, entered Defendant's residence, requested Defendant's presence at the police precinct for an interview, and ultimately transported the Defendant to the precinct in the police vehicle. *See Craighead*, 539 F.3d at 1082. Although testimony or evidence as to what occurred after Defendant left his residence with Officer Topasna would have been relevant information for the Court to consider in making this finding, none of this information was provided to the Court by either party. Accordingly, the Court finds that when Defendant left his residence in Officer Topasna's police vehicle through the time period during which Defendant allegedly made the incriminating statements at issue, Defendant was subjected to custodial interrogation for *Miranda* purposes.

**B. Defendant's Alleged *Miranda* Waiver Is Invalid.**

As Defendant was subjected to custodial interrogation, the Court must next determine whether Defendant's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. Testimonial evidence that is a product of custodial interrogation, such as a confession, is

inadmissible unless a defendant waives his privilege against self-incrimination. *Sangalang*, 2001 Guam 18 ¶ 12 (internal citations omitted).

The "voluntary, knowing and intelligent nature of a *Miranda* waiver is to be gleaned from the totality of the circumstances, which includes the background, experience and conduct of the defendant." *Ferata*, 2007 Guam 8 ¶ 46. Further, the issue of whether a *Miranda* waiver is not coerced and therefore valid depends on the consideration of two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Ferata*, 2007 Guam 8 ¶ 46 (citing *Hualde*, 1999 Guam 3 ¶ 30).

Importantly, this Court notes that "[t]here is a presumption against a finding of a waiver [of one's *Miranda* rights]." *Sangalang*, 2001 Guam 18 ¶ 13; *see also Connelly*, 479 U.S. at 168. Therefore, "before a criminal defendant's statements can be used against him, the People must prove, by a preponderance of the evidence, that the defendant's statements were made knowingly, intelligently, and voluntarily"[2] and that the "defendant knowingly and intelligently waived his *Miranda* rights."[3]

A defendant's language difficulties may affect his ability to knowingly, intelligently and voluntarily waive his *Miranda* rights. *See, e.g., U.S. v. Heredia-Fernandez*, 756 F.2d 1412, 1415-16 (9th Cir. 1985); *U.S. v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998); *U.S. v. Bernard S.*, 795 F.2d 749, 752 (9th Cir. 1986). In *Garibay*, the Ninth Circuit held a waiver of *Miranda* rights to be invalid when the defendant had limited English skills, low verbal IQ, and no interpreter was

---

[2] *People v. Muna*, 1992 WL 245624, at *4 (D. Guam App. Div. Sept. 18, 1995).
[3] *Sangalang*, 2001 Guam 18 ¶ 13; *see also Connelly*, 479 U.S. at 168.

provided. 143 F.3d at 535. The *Garibay* Court considered the following factors in its decision to grant the Defendant's Motion to Suppress:

> (1) whether the defendant signed a written waiver, (2) whether the defendant was advised of his rights in his native tongue, (3) whether the defendant appeared to understand his rights, (4) whether a defendant had the assistance of a translator, (5) whether the defendant's rights were individually and repeatedly explained to him, and (6) whether the defendant had prior experience with the criminal justice system.

*Id.* at 538.

In *People v. Rasauo*, the Guam Supreme Court weighed the *Garibay* factors and held that because of the defendant's language difficulties, the defendant never validly waived his *Miranda* rights. *Rasauo*, 2011 Guam 1 ¶ 2.[4] In *Rasauo*, the arresting officer noticed that Rasauo "spoke English slowly with an accent, but did not offer him the assistance of an interpreter, nor inquire into his ability to speak English." *Id.* at ¶ 4. At the hearing on the Motion to Suppress, the officer who advised Rasauo of his *Miranda* rights testified that he "explained to Rasauo his Constitutional rights paragraph by paragraph, using a standard Custodial Interrogation waiver form," and when Rasauo had trouble understanding certain parts of the form, the officer "attempted to provide clarification, and moved on when Rasauo indicated that he understood." *Id.* at ¶ 6. The advising officer was also able to testify that Rasauo answered several basic questions in English. *Id.* Despite the two officers' first-hand testimonies, the Supreme Court found that Rasauo's waiver of his *Miranda* rights was invalid, and the trial court's failure to suppress his responses to custodial interrogation was in error. *Id.* ¶ 33.

---

[4] Although the Supreme Court held that the Superior Court's denial of the Motion to Suppress was harmless error and therefore did not overturn the lower court's decision, the Court nevertheless made a finding based on the *Garibay* factors that the Defendant did not validly waive his *Miranda* rights. *Rasauo*, 2011 Guam 1 ¶ 2, 33.

In determining whether Defendant's waiver of his *Miranda* rights in the case at bar was valid in light of the *Garibay* factors, this Court reiterates that the People did not produce a witness, such as Officer Topasna or another officer present at the Hagåtña Precinct, who could testify as to: 1) whether Defendant actually signed a waiver, 2) what language was used when advising Defendant of his *Miranda* rights, 3) whether Defendant appeared to understand his *Miranda* rights, 4) whether Defendant had the assistance of a translator when being advised of his *Miranda* rights, or whether 5) the Defendant's rights were individually and repeatedly explained to him. Regarding the sixth *Garibay* factor, there is no evidence before the Court that the Defendant has ever had prior experience with the criminal justice system.[5]

Although the People attempted to demonstrate that Defendant can understand some English through the testimony of Officer Nucum and Carmona, the test for whether a defendant has validly waived his *Miranda* rights is not whether the defendant can generally understand the language used to advise the defendant of his rights. Rather, the test is whether in looking at the totality of the circumstances, the People show by a preponderance of the evidence that Defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Sangalang*, 2001 Guam 18 ¶ 13; *Ferata*, 2007 Guam 8 ¶ 46; *Connelly*, 479 U.S. at 168. In other words, a minimal understanding of a language does not automatically mean that a defendant understands his *Miranda* rights advised in that language and can knowingly, intelligently, and voluntarily waive those rights. *See Garibay*, 143 F.3d at 535-36.

In light of the People's failure to present any evidence or testimony from any witness who actually spoke to Defendant or who observed Defendant from the time he left his residence the morning of February 9, 2020 through the time period during which he allegedly made

---

[5] At the October 15, 2020 Motion Hearing, Lewis also testified that to his knowledge, Defendant has never been arrested. Digital Recording, at 10:36:25-10:36:30 (Oct. 15, 2020).

---

incriminating statements, the People have not met their burden of proving by a preponderance of the evidence that Defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. Accordingly, the Court finds that suppression of the Defendant's statements is warranted. The Court will therefore suppress from use at trial the oral and written statements made to police during Defendant's custodial interrogation on February 9, 2020.

### CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Defendant's Motion to Suppress.

**SO ORDERED** this 17th day of December, 2020.

**HONORABLE DANA A. GUTIERREZ**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

AG, Arriola Law

Date: _____ Time: 4:16pm

Deputy Clerk, Superior Court of Guam